Defendants, Ford, Bacon Davis, Inc., employer of plaintiff, and its insurer, Aetna Casualty Surety Company, appealed from judgment awarding plaintiff workmen's compensation at the rate of $10.40 per week for the duration of his disability to do work of any reasonable character, (found to be permanently total, as alleged), not to exceed four hundred weeks, less payments aggregating $197.60, and from judgment for $250 for medical, surgical and hospital expenses incurred in the treatment of plaintiff's injuries.
Plaintiff alleges that on October 1, 1941, while performing the duties of his employment he experienced an accident in which he sustained serious injuries to his back, hip, leg and side. Describing the accident, he alleges, and the testimony clearly shows that while he and other laborers were carrying a heavy pole, one of the laborers in front of him fell which caused the weight of the pole to become unequally distributed and the sudden added weight upon plaintiff just as he was in the act of stepping over a hole in the ground caused him to fall into the hole, from which the complained of injuries resulted. The pole, it appears, was being carried by six men. It rested upon three pieces of timber, the ends of which were being held respectively by the laborers.
Defendants deny that plaintiff's injuries have produced the character of disability alleged by him. They admit the payment to him of compensation for nineteen weeks at the rate for which sued. They aver that without cause or reason plaintiff on or about November 26, 1941, abandoned competent treatment by a physician of his own choice; that in January, 1942, defendants requested him to submit to examination by Dr. Gilbert Anderson of New Orleans, at their expense, which he refused; that thereafter they requested plaintiff to submit to an examination by other competent physicians selected by them, but he refused and for this reason payments of compensation were discontinued. They further aver that on March 30, 1942, plaintiff did submit to examination at their request by doctors of their selection who reported that in their opinion there exists no present disability unless it be the result of the unnecessary wearing of a body cast applied after he abandoned his original treatment and, consequently, all compensation due him has been paid.
Plaintiff testified, and it is not denied, that immediately after the accident occurred he experienced a sensation in his back as though pins were stuck into it and that he felt badly; that he promptly reported the accident to his immediate superior and tried to work for some hours thereafter, but had to quit "because I just couldn't stand it any longer"; that his "boss" asked him if he desired to see a doctor and that he replied unless his condition improved he would do so; that he stayed in the shade about the scene of his work until four o'clock P.M. that day at which *Page 27 
time he left for Monroe on his employer's truck loaded with other laborers. The next day, at his request, he was visited by Dr. H.V. Collins in the City of Monroe, who treated him until December 6th. He further testified that his left leg "continues, it seems, like it is asleep and a dead feeling", but not as badly as it originally did. He says further:
"It hurts me from the small part of my back on down this (left) hip, down into my leg when I put the least weight on it."
Dr. Collins, after diagnosing plaintiff's ailments, advised that he should go to New Orleans for further examination and possible spine operation. This advice alarmed plaintiff and members of his family and caused him to discontinue the services of Dr. Collins. Thereafter, he put his case in the hands of Dr. C.H. Mosley of Monroe, Louisiana.
Dr. Collins first visited plaintiff the day after he was injured. He was then in bed and complained of serious pains in back and left leg. The back was taped and sedatives given. Dr. Collins decided, from a symptomatic standpoint, that plaintiff had possibly sustained a sacroiliac junction spread and/or a vertebral disc rupture. As time passed and Dr. Collins observed his patient, he became confirmed in his former diagnosis, especially as regards the disc. He called in Dr. C.H. Hill and Dr. John Snellings for consultation, each of whom testified in the case. They do not dissent from Dr. Collins' diagnosis, but confirm it.
Plaintiff was carried to Dr. Mosley's clinic in an ambulance and remained in bed for some ten days. Since that time he has been under close observation and regular treatment by him. Dr. Mosley's diagnosis is reflected from the following part of his testimony, to-wit:
"Q. Will you kindly state what your examination disclosed, both from a clinical standpoint and from the examination of the X-rays? A. From a clinical standpoint, the first thing, he has a traumatic injury to his nervous system. He was highly nervous. Then he complained of pain in his back and down his left leg and when he would move he complained of his back. He had a typical complaint of pain that goes with an injured back, such as we think he has.
"Q. What is your diagnosis, what were your findings? A. He has a fracture of the spine — a fracture of a disc, with pressure on the sciatic nerve going down this leg, with a traumatic neurosis.
"Q. Did you find that condition to exist at your first examination, Doctor? A. Yes, Sir.
"Q. Now, what has been the development, in your opinion, since that time in his condition? A. Well, he is naturally improved slightly, because he couldn't stand up. I pulled him up by his head with a block and tackle and put a cast on him from under his arms down to his hips. I had some negroes to help hold him and he has been able to get around better with that on.
"Q. Did you find any loss of sensation in his leg? A. I did. Loss of sensation in his left leg and muscular activity.
"Q. What caused that? How do you account for it? A. Injury to his nerve.
"Q. What nerve, Doctor? A. The Sciatic nerve. That plexus or nerve that comes out.
"Q. Would the injury which you say you found in his back cause such a condition? A. Yes, Sir.
"Q. How many pictures did you make, Doctor? A. Three."
Several highly reputable physicians of the City of Monroe besides Drs. Collins and Mosley testified in the case. The decided preponderance of their testimony supports the theory that plaintiff's disability is primarily due to a ruptured disc of the spine, an injury which the X-ray will not disclose. The lack of sensation in the left leg, partial paralysis, is accredited to impingement of the sciatic nerve which courses down the left leg from the locus of the rupture. This condition may be relieved only by operation performed by highly competent and experienced surgeons. Such an operation removes the tumorous growth resulting from fluid escaping into the tissues. Pressure on the nerve is thereby relieved. However, permanent relief is not always had even when the operation is performed by the most skilled physician or surgeon.
We deem it unnecessary to prolong this opinion by discussion and comment upon the testimony of the several medical and X-ray experts who appeared in the case. We are glad to say, however, that in this case the line of dispute is not so closely drawn as, unfortunately, has appeared in so many cases arising in and about the City of Monroe. Suffice it to say, plaintiff at *Page 28 
date of accident was a robust, healthy negro man, thirty-five years of age. Since that time (to time of trial) he has been unable to do manual labor, the only sort of work he is competent to perform and the only sort he has performed during life. It is unnecessary for us to specifically determine whether his disability is directly traceable to a ruptured disc, to sacro-iliac strain or to any other specific trauma caused by the accident.
Dr. Mosley applied a cast to plaintiff's body on December 16th. He has worn it continuously since that time except on March 30, 1942, when it was removed in order to meet defendants' request for an examination and taking X-ray pictures. It is not shown that wearing the cast has aggravated the injuries or prolonged disability. Its function is to immobilize the spine while nature is performing its part.
Plaintiff, on Dr. Mosley's advice, declined to remove the cast on two prior occasions when defendants wished to have their physicians make examination and pictures. Defendants complain of this refusal, but as plaintiff acted on the advice of his own physician, we do not think he should be criticized for doing so. It does not appear, nor is it intimated, that the refusals have operated to defendant's prejudice to any extent.
The judgment directs that the $250 allowed for medical, surgical and hospital expenses be applied until exhausted in payment of such expenses in the order incurred. Plaintiff appealed from this portion of the judgment and complains of it here. He contends that the amount should be prorated in the payment of the various bills representing said expenses and without respect to time incurred. He asks that the judgment be accordingly amended.
Subsection 5, Section 8 of the Workmen's Compensation Law, Act No. 242 of 1928, p. 361, authorizes, under certain conditions, recovery by the injured employee of the named expenses. It reads:
"The employer shall in every case coming under this act, furnish reasonable medical, surgical and hospital services and medicines not to exceed $250.00 in value * * *."
When the employer fails or refuses to comply with this law the injured employee is authorized to incur such expenses on his own responsibility. It appears that plaintiff did so only after his employer failed to provide medical and other services to which he was entitled.
The injured employee only may sue to recover expenses authorized by the quoted law, excepting a charity hospital. North Louisiana Clinic v. Breen et al., La.App., 193 So. 208. He is personally responsible for such expenses and judgment therefor should be in his favor. To him is addressed the question of distribution when the $250 is insufficient to pay all expenses.
For the reasons herein assigned, the judgment appealed from is amended by deleting therefrom the proviso following the award of $250.00, to-wit: "* * * provided, that said sum be applied, until exhausted, in payment of medical, surgical and hospital expenses in the order that said expenses were incurred."
And, as thus amended, said judgment is affirmed with costs.