PENOKEE VENEER COMPANY and another, Appellants, vs.
INDUSTRIAL COMMISSION and another, Respondents.

*February 20—March 29, 1948.*

For the appellants there was a brief by *Sanborn, Lamoreux & Pray* of Ashland, and oral argument by *Allan T. Pray.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

FRITZ, J.    Leonard Dishneau was injured on January 17, 1945, while working as an employee of the Penokee Veneer Company at Mellen, Wisconsin.    He was immediately hospitalized and as no physician or panel of physicians was provided by the employer, a nurse at the hospital called in Dr. Gertz who, Dishneau had told her, had been his physician. Dr. Gertz continued to attend and treat Dishneau for a dislocated shoulder blade sustained as the result of the injury on January 17, 1945, until he returned to his work for the employer on March 5, 1945.    During that period of disability neither the employer nor its compensation insurer objected to such treatment by Dr. Gertz, and they accepted liability for such hospitalization and treatment, and also paid Dishneau full compensation for that period.    Upon so resuming such work on March 5, 1945, Dishneau continued working in that employment until May 3, 1945.    On that day he was informed by Dr. Gertz that as the result of his injury on January 17, 1945, he required further treatment and hospitalization for injury which he had then also sustained to his breast, and Dishneau then told Erwin Young,—who was the employer's "safety man" and in charge of all matters of that kind,—that his breast was swollen and painful; that he had consulted Dr. Gertz regarding it, who had told him he was in need of further treat-

ment, and that he had made arrangements for Dishneau's hospitalization; and Dishneau also told Young and the nurse in the employer's safety room, and there showed them the swelling on his breast, and informed them that it was black and blue when he was in the hospital from the injury; and when they asked Dishneau if he was sure the accident on January 17, 1945, was what caused it, he told them "Yes."

After Dishneau quit work on May 3, 1945, he received from the employer's insurer a letter, dated May 4, 1945, stating that since Dr. Gertz, in his first report on the injury, had not advised the insurer about a swollen condition of the chest, they thought it advisable that Dishneau undergo an independent examination and asked him to have such examination by Dr. O'Brien of Ironwood at his earliest convenience, and that Dr. O'Brien was being advised to expect him. On May 4, 1945, the insurer also wrote Dr. Gertz stating that in his original reports no mention was made of a chest condition, and requesting him that he withhold further treatment pending further information, and advising him that any treatment after March 3, 1945, was unauthorized. Dishneau took the letter he received from the insurer to Dr. Gertz and asked if he should go to Dr. O'Brien for examination; and Dr. Gertz advised him not to and cautioned him against it, stating,—

"The examination didn't offer anything so far as the case is concerned; he should not permit any more manipulation or touching of that breast than was absolutely necessary and in view of the fact that he was going into the hospital the next day, there was no need for examination;"

and also told him if he did not have something done he might be dead in a year. Dishneau did not report to Dr. O'Brien for examination. On May 7, 1945, Dishneau was hospitalized one day, and Dr. Gertz, without reporting to the employer before or after operating, removed a lump in Dishneau's breast at the first opportunity he could get him into the hospital; and on May 28, 1945, Dr. Gertz removed the right breast com-

pletely.   Dr. Gertz testified that in his judgment the tumor condition for which he operated on May 7 and May 28, 1945, resulted from the original injury.

The Industrial Commission found and concluded (so far as here material) that as a result of the injury on January 17, 1945, Dishneau sustained additional temporary total disability from May 5, 1945, to July 1, 1945; that the employer had notice of Dishneau's claim that he required further treatment for the cure and relief of that injury and had the opportunity to provide such treatment; that it failed to do so; and that in addition to the treatment which the employer and insurer had provided, Dishneau had incurred and was entitled to reimbursement for the additional charges for medical treatment and hospitalization, and also entitled to additional indemnity for the later period of temporary disability.   There is no claim of any permanent disability.   As appellants state in their brief on this appeal, "The only question is as to the medical and hospital bills and compensation resulting from an alleged disability between May 3, 1945, and July 1, 1945."

Appellants contend the commission's findings (1) that the employer had notice of Dishneau's claim that he required further treatment for the cure and relief of his injury on January 17, 1945, (2) that the employer had opportunity to provide the same, and (3) that it failed or refused so to do, are not supported by credible evidence.   Findings to that effect are important in this case because of the provisions in secs. 102.42 (1) and (2), Stats. 1943, that,—

"(1)  The employer shall supply such medical, surgical and hospital treatment, . . . as may be reasonably required to cure and relieve from the effects of the injury, and in case of his neglect or refusal seasonably to do so, . . . the employer shall be liable for the reasonable expense incurred by or on behalf of the employee in providing the same. . . ."

"(2)  The employee shall have the right to make choice of his attending physician from a panel of physicians to be named by the employer.   Where the employer has knowledge of the

injury and the necessity for treatment, his failure to tender the same shall constitute such neglect or refusal. Failure of the employer to maintain a reasonable number of competent and impartial physicians, ready to undertake the treatment of the employee, and to permit the employee to make choice of his attendant from among them, shall constitute neglect and refusal to furnish such attendance and treatment. . . ."

In this case there was evidence as to the above-stated facts which the commission could consider credible and sufficient to establish the following. That as the result of the injuries sustained by Dishneau on January 17, 1945, he had a dislocated shoulder blade and also a swollen and painful breast, because of which he was then necessarily and promptly hospitalized, but that as no physician or panel of physicians was then provided by his employer, a nurse at the hospital asked Dishneau who had been his physician and, upon his naming Dr. M. A. Gertz, he was called and immediately commenced the treatment of Dishneau. That under those circumstances, and as the employer never objected to Dr. Gertz continuing to attend and treat Dishneau for injury which he sustained on January 17, 1945, it is evident (1) that Dishneau did not *unnecessarily* choose his own physician (in which event he might have been deemed to have done so at the peril of having to bear the burden of the expense, *Milwaukee v. Miller,* 154 Wis. 652, 666, 144 N. W. 188) ; (2) that the employer presumably acquiesced in Dr. Gertz being the physician in charge and permitted to continue in treating Dishneau for relief from all injury sustained on January 17, 1945; (3) and that as the physician in charge Dr. Gertz was impliedly authorized, in the absence of any dissent by the employer, to hospitalize Dishneau in May, 1945, and perform the operations which he then considered necessary immediately, as the result of injury sustained on January 17, 1945. When, after being first temporarily disabled Dishneau resumed and continued working for the employer until May 3, 1945, and the condition of his injured breast had then become so much worse that Dr. Gertz advised him that

further treatment and hospitalization was necessary immediately, and Dishneau then so informed his employer's safety man and a nurse, the employer then had notice that Dishneau's injury required immediate additional treatment and also had opportunity to provide such treatment. But instead of the employer doing so promptly, the employer's compensation insurer merely wrote the letters dated May 4, 1945, to Dishneau and Dr. Gertz to the above-stated effect. As neither the employer nor the insurer had theretofore objected to or found any fault with Dr. Gertz' treatment or had asked Dishneau at any time to change doctors for treatment, and the insurer's letter requested him to submit to an "independent examination" at a time when the attending physician, Dr. Gertz, advised that to be dangerous because of Dishneau's condition, and as there was in the letter no offer of treatment by any other physician, the insurer's statement that it would not accept liability for treatment cannot be deemed to relieve, under the circumstances herein, the liability of the employer and its insurer under the workmen's compensation statutes. The provisions in sec. 102.13 (1), Stats., which require an injured employee to submit to a "reasonable examination" by a physician provided by the employer cannot be deemed to require submission to an examination which in the opinion of the authorized attending physician would be unreasonable because it would imperil the life or health of the employee. As it was evidently on solely this ground that Dr. Gertz advised Dishneau not to submit to the requested examination, and his failure to submit thereto was because of such advice, the commission could consider under the evidence herein that the requested examination was unreasonable, and the fact that Dishneau did not submit thereto did not of itself operate to suspend his rights to begin or maintain proceedings for his collection of compensation. Such suspension would be necessarily dependent upon a finding by the commission that the requested submittal to an examination was reasonable; and whether it was reasonable presented a

question of fact for the commission. As is stated in appellants' brief,—

"It is easy to conceive of situations in which an applicant's physician might properly decline to have him submit to examination as in the case of *Bettison v. Ford, Bacon & Davis,* (La. App. 1942) 11 So. (2d) 25, 28, where the physician advised against the employee's removing a second time a cast which had once been removed by the employer's doctor for an examination. . . ."

Consequently the commission was warranted in finding the employer failed to provide the additional treatment necessary immediately for the cure and relief of Dishneau's injury, and that because of such failure there was not suspended, under sec. 102.13 (1), Stats., the right of Dishneau to maintain a proceeding for the collection of compensation on account of his disability and the resulting loss of earnings during the period from May 3 to July 1, 1945, and the expenses of his hospitalization and medical treatment by Dr. Gertz during that period.

It follows that the circuit court's judgment confirming the commission's order dated August 15, 1946, must be affirmed.

*By the Court.*—Judgment affirmed.