168 So. 93

## DRS. TOLER & TOLER v. MUNSON.

No. 33778.

March 30, 1936.

Rehearing Denied April 27, 1936.

Laycock & Moyse, of Baton Rouge, for Dr. E. O. Munson.

George J. Woodside, of Clinton, for Drs. Toler & Toler.

ODOM, Justice.

Plaintiffs, who are physicians and surgeons, alleged in their petition filed in the district court that Dr. E. O. Munson "is justly and truly indebted unto petitioners in the full sum of $269.00" and indebted unto petitioners "for the use and benefit of" Red Cross Drug Store, Mrs. P. B. Toler, Ella Monroe Jackson, Our Lady of the Lake Sanitarium, Dr. Jones, and Dr. McCaa for certain amounts which are specifically stated.

They alleged that on September 14, 1933, one Fritz Haven, while employed at a cotton gin owned by Dr. Munson, was seriously injured, and that on being called to attend him they at once removed him to their clinic; that the condition of said Haven was critical, and that the amputation of one of his arms was necessary, and that "the said Dr. E. O. Munson, being present, instructed petitioners to spare no means to save his life and assured petitioners that if the insurance company did not pay the expenses he would do so; that acting on the assurances of the said Dr. E. O. Munson that he would be responsible to petitioners for necessary and reasonable expenses, petitioners immediately amputated the injured arm of the said Fritz Haven in their office, cared for him in their

infirmary, employed a registered nurse * * * and bought the necessary drugs, bandages, etc., to properly treat his wound."

It is further alleged that the condition of the said Haven later became worse, and that "said Dr. E. O. Munson instructed petitioners to move said Haven to Our Lady of the Lake Sanitarium at Baton Rouge, Louisiana, to spare no expense to save his life and to employ nurses and necessary consultation if petitioners saw fit to do so, and again assured petitioners that he would pay all such expenses, in case the insurance company refused to pay them."

It is further alleged that "acting on the aforesaid instructions" they removed the injured boy to the sanitarium at Baton Rouge, employed nurses, called Dr. Jones in consultation, employed Dr. McCaa as anesthetician and reamputated the arm and continued to treat him until he was able to be removed from the sanitarium to his home.

Paragraph 7 of the petition reads as follows:

"That the value of the surgical operations and treatment rendered the said Fritz Haven by petitioners and the expenses incurred by them for said Fritz Haven on the instruction of said Dr. E. O. Munson are as follows."

They list the amount due them at $269, the amount due the Red Cross Drug Store at $49, Mrs. Toler, nurse, $18, Ella Monroe Jackson, $6, Our Lady of the Lake Sanitarium, $179.39, Dr. Jones, $25, and Dr. McCaa, $25.

It is alleged in paragraph 8 that "no insurance company has paid any part of the aforesaid bills," and in paragraph 9 that Dr. Munson has paid the nurses, but has refused to pay any of the other bills.

Petitioners prayed that "there be judgment in favor of petitioners and against said Dr. E. O. Munson in the full sum of two hundred and sixty-nine dollars and in favor of petitioners and against said Dr. E. O. Munson for the use and benefit of" the various creditors named.

The defendant excepted to the petition on the ground that it set out no cause or right of action, and, should the court hold that a cause of action is set forth for any amount, "then your exceptor shows in the alternative that it sets forth no cause or right of action insofar as any items other than those claimed by Drs. Toler & Toler are concerned."

The case was tried by a judge ad hoc, who overruled the exceptions. The defendant's answer is in effect a general denial of any liability. There was judgment for plaintiffs as prayed for. Defendant appealed to the Court of Appeal, where the judgment was affirmed except as to the amounts claimed for the nurses. 163 So. 189. These, the court held, were prescribed. We ordered the case up on the relation of the defendant.

When plaintiffs attempted to offer parol evidence in support of their claims, counsel for defendant objected to the introduction of such tetstimony on the ground that according to the petition the alleged promise of Dr. Munson was to pay

the debt of a third person, and that said promise is of no avail to plaintiffs because not in writing, and they cite article 2278 of the Civil Code, which says that parol evidence shall not be received "to prove any promise to pay the debt of a third person."

The objection was overruled, the testimony was admitted subject to the objection and was considered by both courts.

The ruling of the trial court admitting the testimony was correct. It is true, as argued by counsel for defendant, that even if Dr. Munson, the defendant, did promise to pay the debt, if his purpose in making the promise was merely to answer for the debt of another, his promise could not be proved by parol. But whether that was his purpose or whether he intended to obligate himself absolutely and become primarily bound to pay the debt was a question of fact which the court had a right to inquire into and to determine from the evidence.

In Watson Brothers v. Jones, 125 La. 249, 51 So. 187, 188, plaintiffs sued Jones for the price of goods which they sold to Pierson, who was a tenant on Jones' farm. Plaintiffs alleged that Jones contracted with them to the effect that they were to sell and let said Pierson have goods and supplies during the crop year of 1908, and that he, Jones, was to and would pay for the goods at the usual price.

The trial judge refused to hear oral testimony in support of plaintiffs' claim against Jones for the goods sold to Pierson on the ground that the alleged agreement between plaintiffs and Jones, as disclosed by the petition, involved only a promise by Jones that he would pay the debt of Pierson, a third person. On appeal, the judgment was set aside, and the case remanded, with instructions that oral testimony be received in order that it might be determined whether Jones had, as alleged, bound himself unconditionally to pay for the goods, or whether he had merely promised to pay for them if Pierson did not. This court held that if the testimony showed that Jones was to pay for the goods only in the event that Pierson did not, the testimony would have to be disregarded, notwithstanding it had been received, "since it would, in that case, go to prove a promise to pay the debt of another."

In that case this court said:

"There can be no objection to one's contracting to pay for goods to be delivered, whether to the obligor, or to a third person, and the obligation resulting from such a contract may be nonetheless a debt of the obligor because the third person, to whom the goods are delivered, also becomes bound for the price. If the condition of the contract is that the obligor is to pay for the goods only in the event that the person to whom they are to be delivered does not, then the latter is to be regarded as the principal debtor, and the contract is a collateral one, of suretyship, in which the obligor would be regarded as binding himself for the debt of another, and which could not be proved by parol evidence."

In the case at bar the trial court heard the testimony and the Court of Appeal reviewed it at length. Both courts held that the testimony showed that Dr. Munson's

promise to pay the debt was absolute, and that it was supported by sufficient consideration. We find no reason for disturbing their judgment as to the item of $269 claimed by the physicians for their services.

■ As to the other items sued for, we think both courts erred in not sustaining the exception of no cause and no right of action. Plaintiffs sued to recover these amounts "for the use and benefit" of the creditors named, and they prayed that they have judgment against Dr. Munson for said amounts "for the use and benefit" of said creditors.

According to the petition, it was necessary that the injured man have medicines, nurses, and that he be carried to the sanitarium at Baton Rouge, and it was necessary to call a physician in consultation and one to administer an anesthetic, and it further appears that plaintiffs authorized these expenses.

Plaintiffs' theory is that inasmuch as Dr. Munson had told them to spare no expense necessary to save the life of his injured employee, they were his agents and were executing his mandate. If that be true, Dr. Munson is bound for these bills, because article 3021 of the Civil Code says that, "The principal is bound to execute the engagements contracted by the attorney, conformably to the power confided to him."

But because that is true it does not follow that the agent may champion the cause of those who become creditors of the principal by virtue of the authorization of the agent and by suit against the principal re-

cover the amounts due for the use and benefit of the creditors. Judgment can be rendered against Dr. Munson only upon the theory that he owes the debts. If he owes the debts, it is because he contracted them through plaintiffs as his agents. If Dr. Munson owed the drug store, the nurses, the sanitarium and the physicians called in by plaintiffs, these creditors had a cause and right of action against him to recover the amounts due. But in the absence of any special assignment of those claims to plaintiffs and without some special authorization to bring this suit on behalf of the creditors, these plaintiffs were without interest and had no cause or right of action. It is not alleged that the claims were assigned to plaintiffs or that they were authorized by the creditors to sue.

Article 15 of the Code of Practice says that, "An action can only be brought by one having a real and actual interest which he pursues, but as soon as that interest arises, he may bring his action."

Article 3022 of the Civil Code provides that, "The principal ought to reimburse the expenses and charges which the agent has incurred in the execution of the mandate, and pay his commission where one has been stipulated." The Court of Appeal based plaintiffs' right of recovery on this article of the Code. In doing so the court seems to have overlooked the fact that plaintiffs do not ground their suit as to these items upon the theory that the amounts are due them as expenses incurred in the execution of the mandate. They do not allege that the amounts are due them, or that they are bound for the debts, or that they have paid or are ex-

pected to pay the claims, or that any demand has been or will be made upon them by the creditors named. They sue "for the use and benefit" of the creditors.

As a matter of fact, Dr. E. M. Toler testified that he had instructed each of these creditors to charge their bills to Dr. Munson, and the bills were so charged as per his instructions. The testimony and the bills themselves show that the amounts were charged to Dr. Munson and the bills were rendered to him. Dr. Toler says that he told these parties to charge the amounts to Dr. Munson because Dr. Munson had said he would pay them.

For the reasons assigned, the judgment under review is affirmed in so far as it relates to the claim of plaintiffs for $269 for their services. As to the other items, the exception of no cause and no right of action is sustained and plaintiffs' suit as to them is dismissed, plaintiffs to pay the costs incurred in this court, and all other costs to be paid by defendant.

O'NIELL, C. J., absent.

168 So. 96
KELLY et al. v. RAPIDES PARISH POLICE JURY.
No. 33322.

March 30, 1936.

Rehearing Denied April 27, 1936.

