ODOM, Justice
 

 (dissenting).
 

 I cannot concur in the majority opinion. Under the view I take of the case, it is not necessary to consider any of the numerous exceptions filed by the defendants, because in their answers they denied that plaintiff is the owner of the strip of land which it claims.
 

 By making these denials, defendants raised an issue which strikes at the very foundation of plaintiff’s suit. If plaintiff has no title to the property it claims, its suit must necessarily fall. Without title it has no standing to question the interests claimed by defendants. Article 15 of the Code of Practice provides that: “An action can only be brought by one having a
 
 real and actual interest,
 
 which he pursues, but as soon as that interest arises, he may bring his action.”-
 

 In Succession of Flynn, 161 La. 707, 109 So. 395, 396, this court said:
 

 “No one is permitted to question the right of another in respect to a certain subject-matter unless he has a legal interest therein himself.”
 

 One without pecuniary interest has no judicial standing. Griffing v. Taft, 151 La. 442, 91 So. 832; Howcott v. Talen, 133 La. 845, 63 So. 376, 49 L.R.A.,N.S., 45.
 

 In Tichenor v. Tichenor’s Antiseptic Co., 180 La. 119, 156 So. 194, 197, we quoted with approval the following from the case of Quaker Realty Co. v. Labasse, 131 La. 996, 60 So. 661, Ann.Cas.1914A, 1073:
 

 “The principle that one without pecuniary interest has no judicial standing runs all through our jurisprudence; it is founded upon simple plain common sense; it is formulated in article 15 of the Code of Practice, reading, ‘An action can only be brought by one having a real and actual interest which he pursues’; and it has been enforced by this court in a very large number of cases.”
 

 See Waterhouse v. Star Land Co., 139 La. 177, 71 So. 358; Ideal Savings & Homestead Ass’n v. Scott, 181 La. 978, 160 So. 783; Toler & Toler, Drs. v. Munson, 184 La. 895, 168 So. 93.
 

 My opinion is that, if it be conceded, as held by the majority opinion, that the Parish of Jefferson did acquire a fee title to the strip of land involved, it now has no title thereto, or interest therein.
 

 It is clear to me that the Parish of Jefferson intended to convey, and did convey, to the United States what it acquired, and all it acquired, by virtue of and under the expropriation proceedings referred to and made part of the record in this case; that the parish intended to, and did, completely divest itself of whatever it acquired, whether a fee title to the strip of land or an easement over it, and that therefore it now has no judicial standing to question the asserted rights of the defendants, whatever they may be.
 

 The general setting of the case, the official proceedings of the police jury, the court and notarial records, and-all the circumstances, I think, compel this conclusion.
 

 
 *981
 
 The conclusion that the policy jury of Jefferson Parish never intended to acquire anything for the parish, anything for the use and benefit of the parochial corporation, by virtue of the condemnation proceedings which it instituted and carried through, is inescapable, I think, in view of its own avowed purpose in instituting the proceedings, as shown by the. proceedings themselves. It is perfectly clear that what it intended to do was to acquire this strip of land, or right-of-way, not for the parish, but for the United States government, to enable the government to construct a navigation canal which Congress had authorized. Congress not only had authorized the construction of the canal as a United States project, but had set aside $60,000 to defray the expenses of the enterprise. The members of the policy jury thought the building of the canal by the United States government would be beneficial to the parish, and said so.
 

 But the acts of Congress referred to, which had authorized the construction of the canal, specifically provided that:
 

 “no expense shall be incurred by the United States for acquiring any lands and easements required for the purpose of this improvement.” Rivers and Harbors Act of 1915, 63rd Congress, 3rd Session, 38 Statutes at Large, 1049, 1055, Chapter 142, Section 15; Act of March 2, 1919, 65th Congress, 3rd Session, 40 Statutes at Large, 1275, Chapter 95.
 

 The State Legislature, at a special session held in 1917, adopted Act No. 16, which provided that the policy juries of the several parishes of the State might, whenever in their judgment it was to the manifest interest of the public in general, and in order to facilitate the construction, maintenance, and operation of canals, “to be constructed by or under the authority of the United States of America for the purpose of transportation, * * * expropriate rights of way for such canals, when the owner or owners of the lands, in their respective parishes, through which lands said canals are projected and for which such rights of way are needed, shall, from disagreement in price, or any cause whatever refuse to convey said rights of way to the United States of America.”
 

 After considering the police jury proceedings which took place subsequent to the adoption of this act, and especially the wording of its minutes and ordinances, it is perfectly clear, I think, that the expropriation proceedings referred to were instituted under the above act. While Section 6, Article XIV, of the Constitution of 1921 confers upon parishes and municipalities the right to acquire property either by purchase, donation, or expropriation “for navigation canals”, there is nothing whatever to indicaté that the expropriation proceedings involved in this case were instituted under this provision of the Constitution. That provision of the Constitution evidently had reference to “navigation canals” constructed as parochial projects, because it is provided therein that the parishes “for the payment thereof shall have the right to issue bonds, or certificates of indebtedness, in the same manner and subject to the same limitations provided in Section 14 of this article”. The
 
 *983
 
 policy jury made no provision for the payment of the expenses of constructing this canal, for the obvious reason that it was to be built by, and at the expense of, the United States government.
 

 There is nothing in any of the police jury or court proceedings, nor is there any testimony in the record, indicating that the Parish of Jefferson intended to construct a navigation canal as a parochial enterprise. On the contrary, every step taken indicates that the purpose of acquiring this strip of land for a right-of-way was to facilitate the United States government in the construction of a canal.
 

 It is too clear for argument that the public purpose for which this property was acquired by the parish was the construction of a navigation canal by the United States government.
 

 The minutes of the police jury, session October 5, 1921, show that Captain Horace H. Harvey addressed the police jury “as to the necessity of expropriating certain land in Sections 18 and 19 and to dedicate for a canal surveyed by the U. S. Government from Bayou Dupont to Cutler’s Bayou, due to Jonathan Davis refusing to give such right of way, and
 
 it is necessary that the U. S. Government get title to the Property before starting the work".
 
 (Italics here and elsewhere are the writer’s.)
 

 At the same session of the police jury a resolution was adopted reciting that:
 

 “Whereas, the' U. S. Government proposes to dig a canal from Bayou Dupont to Bayou Cutler in accordance with plans of the U. S. Engineer Office, dated July 9, 1919, on file with secretary of this .Police Jury, '* * * and Whereas, the construction of said canal will be of a very great benefit to the whole of the Parish of Jefferson, and it is to the interest of this Parish that said canal be constructed by the U. S. Government; and, Whereas,
 
 it is necessary that this Parish furnish the necessary right of way to the U. S. Government for the construction of said canal;
 
 therefore, Be it ordained * * * that the district attorney be and he is hereby authorized and empowered for and on behalf of this Police Jury * * * to accept rights of way for said proposed canal * * * and further that should said district attorney be unable to obtain said rights of way amicably, that he be and is hereby authorized and empowered to take such legal and necessary steps as he may deem necessary to be taken in order to condemn said rights of way.”
 

 At the same session the police jury appropriated $100 to defray the expenses of the expropriation proceedings.
 

 The purpose of the police jury is clearly set forth by its minutes and the resolution above referred to. And its purpose is made equally clear, if not clearer, by the petition drawn by the district attorney in the suit for the expropriation.
 

 He alleged in Paragraph 1 that the police jury had a right under the law to expropriate a right-of-way for a public navigation canal to be constructed “in the Parish of Jefferson”. The quoted words merely indicate the geographical location
 
 *985
 
 of the canal. In Paragraph 2 of his petition he alleged:
 

 “That the United States Government has appropriated Sixty Thousand ($60,000.00) Dollars for the purpose of constructing a public navigation, canal in the Parish of Jefferson from Bayou Dupont to Bayou Cutler
 
 but it is absolutely necessary that the right of way for said public navigation canal be acquired, free of any cost to the United States Government and that the obligation of acquiring said right of way is upon the Police Jury of the Parish of Jefferson.11
 

 In Paragraph 3 of his petition he described the property necessary to be expropriated, and alleged that two of the owners of land through which the canal was to be constructed “have donated the necessary right of way to the United States Government for the purpose of digging said canal”.
 

 The minutes and resolution of the police jury, and the petition drawn by the district attorney who represented the parish, leave me in no doubt as to the purpose the police jury had in instituting the condemnation proceedings. Its purpose was, as stated in the resolution, to “furnish the necessary right of way to the U. S. Government for the construction of said canal”.
 

 After stating in Paragraph 2 of his petition that the United States government had appropriated funds to' defray the expenses of “constructing a public navigation canal”, the district attorney alleged that it was absolutely necessary that the right-of-way be acquired “free of any cost to the United States Government”, and that “the obligation of acquiring said right of way is upon the Police Jury”. He further alleged that two of the landowners had already “donated the necessary right of way to the United States Government”.
 

 The majority opinion holds that the Parish of Jefferson acquired full ownership of, or a fee title to, the strip of land, and that it transferred to the United States government only an easement or servitude. Not only is it so held, but it is held that the police jury intended from the beginning to do just that. I quote from the majority opinion:
 

 “An examination of the record in this case discloses that throughout the whole transaction the parochial authorities had the desire and intention to transfer to the United States only a servitude. This is shown by the resolutions adopted by the Police Jury and by the petition and prayer filed by the parish in the expropriation proceeding. * * *
 

 “It will thus be seen that the act of donation follows the authorization granted by the resolution of the Police Jury in that it also limits the transfer to use as a right of way for the Barataria Bay Waterway. It will be seen also that in fixing this limitation the parochial authorities were consistently following the course that they evidently clearly had in mind from the’inception of the project.”
 

 Now to say that the police jury had in mind and intended, from the inception of the project, the acquisition of the fee title to the land, and intended all the while to
 
 *987
 
 transfer or donate to the United States government only an easement thereon; that 'it intended to acquire by forced or condemnation proceedings the fee which it intended to hold or reserve for its private gain, is to convict the police jury of intending to do what the Constitution of 1921 positively prohibits. Furthermore, such a holding convicts the district attorney who represented the parish, and the judge before whom the expropriation proceedings were carried on, of sanctioning a proceeding which they must have known was in the very teeth of the Constitution.
 

 Section 2, Article I, of the Constitution of this state says:
 

 “Except as otherwise provided in this Constitution, private property shall not be taken or damaged
 
 except for public purposes
 
 and after just and adequate compensation is paid.”
 

 Section 15, Article IV, of the Constitution says:
 

 “nor shall vested rights be divested,
 
 unless for purposes of public utility,
 
 and for just and adequate compensation previously paid.” (Italics mine.)
 

 The private property of the Davis heirs was forcibly taken from them under the guise that the taking was for a public purpose, a public utility. The police jury was represented by the district attorney, who of course knew of the above quoted provisions of the Constitution. He knew, of course, that under the Constitution this property could be taken only for a public purpose. In his petition to the court, asking that this property be condemned, he stated specifically that it was sought “for a public purpose”, which purpose he alleged was for a right-of-way for a public navigation canal to be constructed, not by the Parish of Jefferson, but “in the Parish of Jefferson” by the United States government.
 

 He knew, as did the judge, that the taking of this property for other than a purely public purpose would be in the teeth of the Constitution — a taking of private property without due process of law.
 

 But, if the holding of the majority be correct, which is that the police jury intended to acquire, and did acquire, the fee title to this strip of land, and intended to convey, and did convey, to the United States government only a servitude, or an easement, over it for the construction of the canal, the result is that the police jury has acquired the naked ownership, or the fee simple title, to this private property, not for a public purpose, but for a private purpose, for the private gain of the parish.
 

 Counsel for plaintiff have not informed the court, either in oral argument or in brief, that the parish now has, or that it ever had, any use for this strip of land for any public purpose other than for a right-of-way for a public navigation canal, authorized and to be constructed by the United States government.
 

 It is inconceivable that either the district attorney or the judge before whom the condemnation proceedings were had would have permitted the police jury to acquire this private property, had it been contem
 
 *989
 
 plated that its purpose was to acquire a greater interest therein than it intended to transfer to the United States government. The judge was informed by the pleadings that the parish wanted a right-of-way for the canal. Surely he did not intend to permit the parish to take and keep the fee title to this property for its private gain. And yet that is the result if the majority holding be correct.
 

 In the case of Henry W. O’Neill et als. v. Jacob Leamer, 239 U.S. 244, 36 S.Ct. 54, 60 L.Ed. 249, it was held that a contention that the expropriation of land for a drainage district was essentially for a private purpose and hence in violation of the Fourteenth Amendment of the United States Constitution, U.S.C.A., as amounting to a deprivation of property without due process of law, presented a federal question which will support a writ of error from the Federal Supreme Court to a state court.
 

 The ruling of that case is clearly to the effect that, if the land involved had been taken for other than a purely public purpose, the expropriation proceedings would be unconstitutional.
 

 In Cincinnati v. Vester, 281 U.S. 439, 50 S.Ct. 360, 363, 74 L.Ed. 950, Chief Justice Hughes, speaking for the court, said:
 

 “To the end that the taking shall be shown to be within its authority, the municipality is called upon to specify definitely the purpose of the appropriation.”
 

 It was held that the public purpose for which the expropriation is sought must be definitely defined, and that “To define is to limit”, and that “private property could not be taken for some independent and undisclosed public use”.
 

 In that case the court was speaking-of condemnation proceedings under Ohio law. The same rules apply in this state. The public purpose must be defined.
 

 In the case at bar, the “public purpose” of the taking was definitely stated, “defined”, to be for a “right of way” for a public navigation canal to be constructed by, and at the expense of, the United States government.
 

 If the Parish of Jefferson took by this proceeding more than was needed for the purpose stated; if it took the fee when only an easement was required, then the taking of the excess, the fee, was unconstitutional as the taking of private property without due process of law.
 

 To say that the police jury intended to do that is to convict it of ulterior motives. It is harsh criticism to say that the district attorney and the judge sanctioned proceedings which they knew deprived these private landowners of their property without due process of law.
 

 It therefore seems clear to me that it was never contemplated by the police jury, by the district attorney, or by the judge that the parish intended to acquire any right or title in or to the land which would not, in due course, be transferred to the United States government.
 

 The judgment rendered in the condemnation proceedings recognized the
 
 *991
 
 right of the parish “to expropriate and acquire for public purposes, for the construction of a navigation canal and-other public works in connection therewith”, the ■strip of land here involved. The only “public purpose” suggested was the canal to be built by the United' States government. The terms of the judgment limited the taking to that purpose.
 

 This judgment was signed in open court ■on December 12, 1921. On January 7, 1922, the police jury of Jefferson Parish adopted an ordinance which recites, among other things, that in the matter entitled '“Parish of Jefferson vs. Heirs of Samuel Davis, No. 3510, * * * the Parish of Jefferson was adjudged to be entitled
 
 to a ■right of way four hundred (400) feet in ■width over and across the property of the heirs of Samuel
 
 Davis,
 
 located on the line of canal to be constmcted by the United States Government from Bayou Dupont .to Bayou Cutler”.
 
 And by this ordinance it was ordained: “that the President of the Police Jury be, and he is hereby authorized and empowered to sign the necessary .act of sale and transfer to the right of way ■obtained by the Parish of Jefferson, in the .above numbered and entitled cause, to the United States of America,” said transfer to be made without cost or consideration to the United States of America.
 

 It will be noted that the ordinance recited that the parish was adjudged to be entitled to a “right of way”, and authorized the president of the police jury to sign the necessary act of sale and transfer
 
 “to the right of way
 
 obtained by the Parish of Jefferson, in the above numbered and entitled cause, to the United States of America”.
 

 This ordinance can be interpreted to mean only this, that the police jury intended to authorize its president to convey to the United States what it acquired, and all it acquired, by the condemnation proceedings specifically referred to therein.
 

 Pursuant to the above resolution, the president of the police jury made the transfer before a notary public on January 12, 1922. That act of transfer recited that the Parish of Jefferson, “acting by and through the Police Jury of the Parish of Jefferson, * * * herein represented by Mr. Jules G. Fisher, President thereof, acting under and by virtue of a resolution adopted at a meeting held by said jury on the 4th [7th] day of January, 1922, * * * does by these presents grant, bargain, donate, convey, transfer, assign and set over unto the United States of America, for perpetual use
 
 as a right of way
 
 for the Barataría Bay Waterway all that certain lot or parcel of land situated in the Parish of Jefferson, State of Louisiana, and described as follows”.
 

 Then follows a description of the 400-foot strip of land acquired by virtue of the condemnation proceedings. In the description of the property transferred, the condemnation proceedings by which it was acquired are referred to.
 

 It is perfectly .clear that, whatever the parish acquired, whether the land in fee or
 
 *993
 
 a right of passage, or a servitude over it, was acquired for a “defined” public purpose, and that what it acquired was sold for the same “defined” public purpose. In short, the parish completely divested itself of all right, title, or interest, in that which it now claims.
 

 The majority opinion holds that, when land is acquired “for the public use in fee simple” either by the exercise of the power of eminent domain or by purchase, the former owners retain no rights in the land, “and the public use may be abandoned, or the land may be devoted to a different use without any impairment of the estate acquired or any reversion to the former owners.”
 

 This quotation is from 10 R.C.L., p. 240, Sec. 202. The opinion quotes also from 20 C.J., Sec. 584, p. 1227. I copy the following from the court’s opinion:
 

 “Even where the condemnor takes only an easement or servitude, ‘the property may be applied tó a different use where the owner has received the full market value of the land or upon payment of additional compensation to the owner of the fee,
 
 where the different use is also a public use.’ ”
 

 The above authorities are cited and quoted, as I understand the court’s opinion, in support of the holding that, in as much as the Parish of Jefferson acquired the fee title by the expropriation proceeding, the original landowners have no right to complain because they were completely divested of the fee and have no interest; that they cannot complain even though it appears that the- parish acquired more than was necessary for the discloséd or avowed public purpose; and now that the parish owns the fee, ‘‘the property may be applied to a different use”, which
 
 use
 
 in this case is in no sense a “public use” but a private use, the production of oil for the private benefit of the parochial corporation.
 

 Certainly if property is acquired by a municipal or parochial corporation “by purchase” or a conventional transaction, the vendor can never complain because in such case his divestiture of title results from his own voluntary act.
 

 But where the divestiture results from the exercise of the power of eminent domain, a different situation is presented. Private property rights are sacred, and, while the Constitution permits an invasion of these rights, such invasion is sanctioned only for the public good. Private property cannot be taken by the exercise of the power of eminent domain “except for public purposes”, and, from a purely legal standpoint, it is impossible to take by this method more than is necessary for the contemplated public purpose.
 

 It is true that it has been frequently held by courts of last resort that, when “land has been acquired for the public use”, the “land may be devoted to a different use without any impairment of the estate acquired”.' But the very quotation which the majority opinion uses from Corpus Juris shows that the change of use is
 
 *995
 
 .permissible only “where the different use is also a public use”. The quotation to which I refer is found in the opinion as follows:
 

 “the property may be applied to a different use where the owner has received the full market value of the land or upon payment of additional compensation to the owner of the fee,
 
 where the different use is also a public use.”
 
 (Italics are mine.)
 

 A reading of the entire Section 202, 10 R.C.L., from which the court quoted, shows that the new use must be of the same general character as the original one.
 

 The true rule unquestionably is this: “The use of land taken must be in accordance with ánd for the purposes which justified its taking.”
 

 This quotation is from 20 C.J., Sec. S84, p. 1227. In support of it, cases are cited from 16 states. Immediately following the above text is that quoted by the court in the majority opinion, to the effect that the use may be changed “where the different use is also a public use”.
 

 I think the .holding that the police jury intended to acquire, and did acquire, the fee, and that it intended to convey, and did convey, to the United States government only an easement is erroneous, and that the error is patent on the face of the proceedings when read and construed as a ■whole.
 

 I dissent.