TATE, Judge.
Plaintiff Hampton Wade appealed from judgment dismissing his suit for workmen’s *118 compensation against his former employer, Calcasieu Paper Company, Inc.
It is undisputed that Wade was injured in the course of his hazardous employment on October 19, 1951, and that following the injury (after some initial disagreement) the defendant-appellee paid Wade compensation for 101 weeks. This suit is for continued compensation during disability not to exceed 400 weeks, based upon the employee’s allegations of continuing disability resulting from the accidental injuries sustained by his left shoulder and arm.
A resolution of this cause depends almost1 entirely upon a consideration of the medical testimony educed.
Dr. T. E. Banks, orthopedic specialist of Alexandria, examined Wade on May 5th, 19th, and 21st, of 1952, and again on November 30th of 1953. It was as a result of Dr. Banks’ initial diagnosis based on objective symptoms (including atrophy, and decrease in reflex response), that compensation was paid to Wade. Dr. Banks’ original diagnosis was injury to the brachial plexus (i.e., nerve cord leading to the left arm), or components thereof. Wade was hospitalized at Baptist Hospital on May 19, 1952, under head traction for 48 hours. According to Dr. Banks, Wade wished to go home after 48 .hours of traction, stating that he was free of pain. However, Dr. Banks still found objective symptoms indicating disability, and in his report to Wade’s employer dated June 11, 1952, he stated: “An evaluation approximately 12 months after the time of injury would he more in line with final prognosis.’’ As he stated on direct examination, “I. feel and felt at that time that final evaluation of peripheral nerve .injuries should not be made in less than 12 months from the time of injury in most cases”.
When Wade was re-examined by Dr. Banks on November 30, 1953, he • found normal reflexes and no atrophy. He found stocking hypesthesia in the entire left upper extremity, and he felt this blanket insensitivity to feeling pin pricks inexplicable medically. He found full range of motion in the left shoulder, elbow, wrist and hand, and noted that in his opinion Wade was able to move without any apparent restrictions or weakness except when undergoing medical examination. Dr. Banks was unable to find any physiological cause of the claimed inability to move the left arm. In Dr. Banks’ opinion in November, 1953, Wade was fully recovered and able to return to his former employment.
Dr. Edmund C. Campbell, orthopedic specialist of Lake Charles, also examined .Wade on behalf of defendant on January 15, 1954, and his findings of non-disability were similar to those of Dr. Banks. However, Dr. Campbell did note a narrowing between C-5 and C-6 of the cervical spine, as well as a possibility of an old fracture in C-5. This, other medical witnesses testified, could be indicative of nerve injury producing weakness in the left arm and hand of which Wade complains.
Dr. C. L. Saint, company physician, Elizabeth, who had examined Wade at the time of the initial injury and also in November of 1953, also testified that Wade showed no medical evidence of disability.
On behalf of plaintiff were called three qualified general practitioners.
Dr. George W. Smith, Alexandria, testified that his general findings (based, however, entirely on subjective complaints) in his examination of June 10, 1954, were consistent with the nerve cord or nerve injury originally diagnosed by Dr. Banks. Dr. O. B. Owens, Alexandria, testified that as a result of his examination of March 24, 1954, he felt that Wade was disabled due to a tightness of left shoulder muscles resulting from disuse; he felt that although the physical mechanism to move the shoulder muscles was present, the disability was objective — a “spastic tightness”, an un-willed protective mechanism for a painful shoulder. (Dr. Banks testified that in November, 1953, Wade had full motion in the left shoulder and no muscle spasm, and added “there is such a thing as voluntary spasm of the muscles.”) In Dr. Owens’ opinion this temporary disability would disappear *119 without treatment within three months, or less with supervised physical therapy.
Especially impressive to us was the testimony of Dr. W. D. Miner of Oberlin, general practitioner, who examined Wade on the morning of the trial, June 16, 1954, without benefit of x-ray or previous medical history. He found Wade disabled for ordinary manual labor based upon the following: (a) Strong grip in thumb and first finger in left hand, but very weak grip in remaining three fingers of left hand; (b) lack of motion in left shoulder joint, with .scapula doing most of the moving. Dr. Miner stated that this weakness in grip affecting only the last three fingers would most probably be caused by damage to the nerves leaving the spinal canal from the cervical discs C-5, C-6, C-7, or C-8, of which the narrowing between C-5 and C-6 shown by x-ray could be indicative. Dr. Miner admitted on cross-examination that the weakness in grip could be voluntarily controlled; but he felt it unlikely, since usually a patient wishing to give a “fish hand shake” gives it with all five fingers, rather than only the latter three. To us, as to Dr. Miner, it did not seem probable that this illiterate colored laborer, medically unschooled, would have feigned the weak grip in only the latter three fingers of the left hand, especially since none of the other examining physicians had made any comment concerning his grip.
In view of Dr. Miner’s testimony that the nerve damage felt by him to be the cause of Wade’s disability lay in the field of neurology or neurosurgery, rather than orthopedics, and that there is specialized neurological electric equipment to test such nerve deficiencies, counsel for plaintiff urges very strongly that the employer’s failure to have Wade examined by neurologists or neurosurgeons, but only by orthopedists much less competent to discover such nerve damage, raises a presumption that Wade is actually suffering from nerve damage. We regret very much, as we are sure the District Court did, that a neurological or neuro-surgical opinion regarding the alleged nerve damage is not available to aid in determination of disability; but we feel the burden of producing such evidence falls upon the plaintiff-employee, rather than upon the defendant-employer. For plaintiff Wade has the burden of proving his present continuing disability.
Even though, as in the present, case, the preponderance of the medical evidence may indicate non-disability (and probably even though all the medical evidence should indicate the probability of non-disability, but not exclude the possibility of disability), it is open to the injured employee to prove to the courts through lay evidence by preponderance of all the evidence educed, that what is medically a mere possibility of disability, is an actuality. In the present instance, Wade produced only two witnesses, himself, and J. B. Powell, a former employer of Wade, now engaged in peddling produce who passes by Wade’s house three or four times a week. Powell’s testimony was merely that he didn’t see Wade working in his garden any more, as he used to before the accident. Wade himself testified that he is unable to use the left arm at all. There was no further lay evidence than this.
The District Court found Wade made an extremely impressive witness, but also found that he had been verbally inaccurate in at least three ’ instances, and therefore doubted Wade’s credibility.
Taking the record as a whole, we are unable to say that the determination of the District Court that Wade was no longer disabled as a result of the accident of December 18, 1951, is manifestly erroneous.
For the above and foregoing reasons, the judgment of the District Court herein dismissing plaintiff’s suit is affirmed. Since this suit was filed in forma pauperis, costs will not be assessed against plaintiff Wade.