125 So.2d 664 (1960)
Marius FONTENOT, Plaintiff-Appellee,
v.
TRAVELERS INSURANCE COMPANY, Defendant-Appellant.
No. 158.
Court of Appeal of Louisiana, Third Circuit.
December 19, 1960.
*665 Dubuisson & Dubuisson, by James G. Dubuisson, Opelousas, for defendant-appellant.
*666 Tate & Tate, by Donald Tate, Mamou, for plaintiff-appellee.
Before TATE, SAVOY, and HOOD, JJ.
TATE, Judge.
On November 18, 1952 Marius Fontenot was extensively burned while working for a contractor. He brings this suit for workmen's compensation benefits against his employer's insurer. The latter appeals from adverse judgment awarding Fontenot not only compensation and medical expenses, but also penalties and attorney's fees for the arbitrary non-payment of compensation. The plaintiff Fontenot answers the appeal, praying for an increase in the amounts allowed for medical expenses and for penalty attorney's fees.
The plaintiff's total disability is admitted, and the defendant insurer has in fact been paying compensation at the weekly rate of $22.10 since the disabling accident, save for several months' interruption which precipitated the present suit. Upon appeal, the defendant insurer questions solely (1) the trial court's award of weekly compensation at the rate of $30 and (2) the trial court's allowance of penalties for the allegedly arbitrary non-payment of compensation.

I.
The employer's office manager testified that the normal workday of the employer's construction crew "was to work as long as daylight and weather permitted". (Tr. 147.) Plaintiff's fellow employees testified that the normal working day of the crew was from ten to eleven hours, six days per week. (Tr. 121, 127, 133.) Evidence taken from the only daily time-sheet itemized in the record shows that the great preponderance of the employees (20 out of 27) worked between 10 and 11½ hours on that day. (Tr. 149.) The trial court's finding that the employee's compensation should be based upon a daily wage of $8.50 (10 hours at the hourly wage of 85¢), is supported by the vast preponderance of the virtually uncontradicted evidence.
In awarding compensation at the weekly rate of $30, the trial court computed the compensation rate due as 65% of weekly wages of $51 (i. e., $33.15 reduced to the then statutory maximum of $30 applicable at the time of the accident), correctly using a six-day week as basis and applying the rule definitively stated by our Supreme Court when it reiterated and clarified earlier jurisprudence in Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399, 404:
"After determining an employee's daily wage, the six day week is to be employed in calculating his weekly wage. If he is injured, he is deprived of this ability to work six days per week and remuneration is awarded him for this deprivation. This test must be applied regardless of the number of days he works for the particular employer by whom he is employed at the time of his injury."
To the same effect: Graham v. Blewer, La.App. 3 Cir., 124 So.2d 579; Murphy v. American Gen. Ins. Co., La.App. 2 Cir., 122 So.2d 100; Pope v. Coney, La.App. 1 Cir., 119 So.2d 136; Darby v. Johnson, La.App. 1 Cir., 118 So.2d 707. See also: Troquille v. Lacaze's Estate, 1953, 222 La. 611, 63 So. 2d 139; Jarrell v. Travelers Ins. Co., 1950, 218 La. 531, 50 So.2d 22; and Rylander v. T. Smith & Son, 1933, 177 La. 716, 149 So. 434; Malone, Louisiana Workmen's Compensation Law (1951), Section 323 (1960 pocket parts).
The defendant insurer contends that the correct weekly compensation rate is $22.10, the rate at which it has paid the plaintiff compensation during most of the period following the accident, which is computed upon wages paid for an allegedly customary work-week of forty hours. The appellant relies upon the case of Caddo Contracting Co. v. Johnson, 222 La. 796, 64 So.2d 177.
This contention of plaintiff's able counsel, astutely advanced in an effort perhaps to avoid penalties for the arbitrary non-payment of the correct compensation *667 due, is completely without merit. Inadvertent language used in the Caddo Contracting decision, where the question was not at issue, was clarified by the Supreme Court in the above-cited Carrington decision, with a specific reference to the Caddo Contracting case and to the earlier Supreme Court cases which had expressly decided the contention contrary to the views advanced by the appellant. We may further add that we agree with the trial court's finding that no customary work-week of 40 hours was proved by the contradicted and uncorroborated testimony of the employer's officer manager, who (despite questioning by the trial court verifying the existence of such records, Tr. 155-6) failed to produce available weekly wage records as to the customary work-week of the employees.

II.
The trial court further assessed the defendant insurer with penalties for the arbitrary non-payment of this compensation claim in the amount of 12% upon all unpaid compensation and medical expenses as well as for penalty attorney's fees of $1,700. LSA-R.S. 22:658. The insurer appellant contends that such award of penalties was erroneous, while the plaintiff-appellee by answer to the appeal requests that the amount of penalty attorney's fees be increased.
Although the insurer paid compensation at the rate of $22.10 weekly for about four months following the accident, the payment of compensation was terminated on March 24, 1953. The employee filed suit to recover compensation on May 22nd; the defendant insurer answered and denied liability on July 6; but nevertheless, some 2½ months after suit was filed, the payment of weekly compensation of $22.10 was resumed on August 5 (Tr. 42) without prejudice to plaintiff's right to pursue penalties (Tr. 46). The record does not reflect the slightest legal excuse for the defendant's termination of compensation, and as the trial court stated the "plaintiff would probably not have been put to the necessity and expense of employing counsel but for the arbitrary and unreasonable attitude of the insurer". (Tr. 32.)
As was recently noted in Darby v. Johnson, La.App. 1 Cir., 118 So.2d 707, 711, "a failure to pay or to tender an amount for which the employer is undoubtedly liable under the compensation act is arbitrary and unreasonable so as to require the imposition of statutory penalties whenever such failure is without legal basis and there is no serious question upon the merits that the disabled employee is entitled to payment of such compensation benefits. (Citations omitted)." See also Seal v. Lionel F. Favret Co., 238 La. 60, 113 So.2d 468; Gloston v. Coal Operators Cas. Co., La.App. 1 Cir., 85 So.2d 100, certiorari denied. The trial court therefore correctly held the termination of compensation to be arbitrary so as to subject the defendant insurer to statutory penalties.
Likewise, we think the trial court correctly allowed penalties for the arbitrary and continued non-payment despite judicial demand of the one thousand dollars medical expenses (then the statutory maximum, Act 322 of 1952, amending LSA-R.S. 23:1203), occasioned by the plaintiff's serious burn injuries sustained in the accident at work. The only apparent basis upon which payment was resisted was the feeling of the insurer's adjuster that "it may possibly be necessary for us to pro-rate our policy limit [of $1,000.00] among the interested physicians or institutions in this case" (Tr. 27), a position without legal basis in view of the jurisprudence that the claimant rather than the employer determines the distribution of the medical expenses recovered when the cost of medical treatment exceeds the statutory maximum (Taylor v. Mansfield Hardwood Lbr. Co., La.App. 2 Cir., 65 So.2d 360; Lanoue v. Century Indemnity Co., La.App. 1 Cir., 30 So.2d 207; Bettison v. Ford, Bacon & Davis, Inc., La. App. 2 Cir., 11 So.2d 25), and also without factual basis under the present record in the absence of any evidence that any medical *668 expenses were occasioned other than those for which recovery is sought herein as occasioned by the initial hospitalization and services furnished by the attending physician. It is further not unworthy of note that as of the judgment below in June 1960 these medical expenses had not been paid despite judicial demand for them instituted in mid-1953.
The trial court awarded a total of $1,700 penalty attorney's fees for the arbitrary termination of compensation and non-payment of compensation at the correct rate, and for the non-payment of medical expenses due. Such an award we feel is justified by the record. See Cain v. Employers Cas. Co., 236 La. 1085, 110 So.2d 108; Monk v. Louisiana Forestry Commission, La.App. 3 Cir., 124 So.2d 351; Finn v. Delta Drilling Co., La.App. 1 Cir., 121 So.2d 340.
Despite the strong argument by the plaintiff's counsel that the record justifies a greater award of attorney's fees, we will not disturb the allowance made by the trial court. We feel such award to be within its discretion, considering that, although the initial termination of compensation was undoubtedly arbitrary, the insurer did resume the payment of weekly compensation within 2½ months after suit was filed, so that a large portion of the attorney's efforts which will be compensated by penalty fees were occasioned to secure payment only of the arbitrary $7.85 weekly deficiency in compensation paid and of the one thousand dollars medical expenses arbitrarily not paid.

III.
The only remaining question of this appeal is that posed by the plaintiff's answer filed in this court requesting that in accordance with the prayer of his suit he be awarded additional medical expenses occasioned by his injuries in the amount of $947.55, in addition to the statutory maximum of one thousand dollars awarded by the trial court.
The basis for this contention is that the plaintiff was brought immediately after the accident by a representative of the employer to the Savoy Hospital in Mamou, where the claimant hovered between life and death for several days and where he was hospitalized until January 4, 1953, incurring total medical expenses of $1707.80 by that date (including $1,472.80 hospitalization costs). During this period neither the plaintiff nor his doctor were informed by the employer or its insurer that liability for more than the first one thousand dollars' medical treatment would subsequently be denied.
The plaintiff relies upon jurisprudence holding that an employer or its insurer may incur liability for medical treatment to an injured employee in excess of the statutory maximum provided by the compensation act when the employer or its insurer expressly or implicitly authorizes such excess treatment (Drs. Toler & Toler v. Munson, 184 La. 895, 168 So. 93; O'Ferrall v. Nashville Bridge Co., 165 La. 963, 116 So. 399; Wadlington v. Barron, La.App. 2 Cir., 91 So.2d 448; Gardiner v. Cleveland Motors, Inc., La.App. 1 Cir., 16 So.2d 544; Webb v. Shreveport Packing Co., La.App. 2 Cir., 180 So. 843), and that an agreement to pay the employee's excess medical expenses is a stipulation for his benefit which may be directly enforced by him in a suit against the insurer for compensation benefits (Cummings v. Albert, La.App. 1 Cir., 86 So.2d 727).
There is much force to the plaintiff's argument that a compensation insurer, knowingly accepting without protest the benefit of medical treatment to a desperately injured employee brought by its employer insured to a doctor immediately following a serious accident, should be held to have authorized and ratified reasonable medical treatment in excess of the statutory maximum obviously needed, even at the time of admission, to save the employee's life and also to minimize compensation liability; especially since the attending physician ordinarily will not due to his professional *669 ethics discharge a critically injured employee in mid-treatment when the employee himself is unable to pay for such continued services. However, in view of the decision in Baton Rouge General Hospital v. Superior Cleaners, 231 La. 820, 93 So.2d 20 (also a serious burn case), we cannot conclude, in the absence of any evidence as to any further authorization by the employer or its compensation insurer for unlimited treatment, that such parties can be held liable for medical expenses incurred in excess of the statutory maximum simply because the injured employee was brought to the attending physician following the accident and because medical reports as to his subsequent condition were then requested by the insurer on several occasions thereafter, the only acts of authorization or ratification actually relied upon by the plaintiff. See also North Louisiana Clinic v. Breen, La. App. 2 Cir., 193 So. 208
Decree.
For the foregoing reasons, the judgment of the trial court is
Affirmed.