157 So.2d 356 (1963)
Willie WILLIAMS, Plaintiff-Appellee,
v.
The TRAVELERS INSURANCE COMPANY, Defendant-Appellant.
No. 950.
Court of Appeal of Louisiana, Third Circuit.
October 30, 1963.
*357 Dubuisson & Dubuisson, by William A. Brinkhaus, Opelousas, for defendant-appellant.
Fusilier, Pucheau & Soileau by L. O. Fusilier, Ville Platte, Preston N. Aucoin, Ville Platte, for plaintiff-appellee.
Before TATE, SAVOY, and CULPEPPER, JJ.
TATE, Judge.
This is a workmen's compensation suit. The employer's insurer appeals from an award to the claimant for total and permanent disability, together with penalties for the arbitrary non-payment of compensation due. By answer to the appeal, the plaintiff prays for an increase in the penalty attorney's fees awarded.
The issues of this appeal relate (1) to disability and (2) to penalties, if any, allowable because of the defendant's failure to pay workmen's compensation.

1. Disability.
The plaintiff was employed on a construction crew clearing a right of way. While he and several co-employees were pulling down a tree on September 7, 1962, he slipped, and a pole struck him in his right groin.
The accident caused continuing complaints of severe pain running from the groin through to the lower back. The initial attending physician found severe muscle contusions in the groin area.
The claimant was hospitalized from September 11th to September 16th. Because of the continued complaints of pain, the attending physician sent him for evaluation on September 24th to an orthopedic surgeon; this specialist found no mechanical explanation of the complaints of pain and felt that the plaintiff had recovered sufficiently from the contusion of the groin and back area to return to work.
The attending physician nevertheless felt that the claimant's continued complaints of pain were justified, and that the cause of these continued pains might be that the blow could have caused some injury to internal organs (Tr. 203) or the nerves (Tr. 205) in this area.
The lay evidence indicates that the claimant continued to complain of pain in the groin and back. However, on November 26th he returned to heavy work running a power saw, which he continued to do over a period of two months. The claimant explained that it was necessary for him to work in order to support his wife and three children. He stated that he worked with pain, and, while the defendant produced several witnesses who said that the claimant had performed this heavy work without complaint, one of the defendant's witnesses admitted that, although the claimant performed his duty satisfactorily, the claimant seemed to work as if something was wrong with him.
Just before the trial was held, some five months after the injury, the defendant procured the examination of a specialist in internal medicine. His examination excluded as a cause of the patient's complaints any injury to the internal organs. This specialist did, however, find that there was tenderness *358 in the groin area where the trauma had been sustained. He felt that the explanation, if any, of this tenderness was not in the field of internal medicine, his own specialty.
Also testifying was the orthopedist who had examined the claimant two weeks after the injury, and who also re-examined him just before the trial. This orthopedist testified that injuries in the groin area were within the field of orthopedics. He found no organic explanation for the patient's complaints of pain in the groin and back area, and he further felt that the claimant did not manifest any objective symptoms of pain in the manner in which he moved and held himself. While he had found the plaintiff's mobility slightly restricted on his first examination in September, just after the injury, he felt that the claimant's mobility had returned to normal by the time of his examination in January four months later, just before the trial. Tr. 44-45.
The trial court, admitting that the question was a perplexing one, held that the plaintiff had proved an indefinite total disability at the time of the trial, based on the testimony of the attending physician, which was to some extent corroborated by the testimony as to tenderness by the internal specialist testifying for the defendant, and which was also somewhat corroborated by the lay testimony. The trial court apparently felt that judgment should be rendered in favor of the plaintiff on that issue, even though the plaintiff had only barely proved his case, because the burden on the plaintiff in a compensation suit is only to prove his case by a preponderance of the evidence, not beyond a reasonable doubt. Webber v. Wofford-Brindley Lumber Co., La.App. 1 Cir., 113 So.2d 23, certiorari denied.
However, a majority of this court has ultimately concluded that the plaintiff did not sustain his burden of proving any residual disability beyond the initial period following the injury.
The compensation claimant has the burden of proving residual disability resulting from a compensable accident, Seals v. Potlatch Forests, Inc., La.App. 3 Cir., 151 So.2d 587, as well as of proving a causal relationship between the present complaints and the industrial accident upon which the claim for compensation is founded, Soileau v. Travelers Insurance Co., La.App. 3 Cir., 154 So.2d 463.
As to the causal relationship, the sparse medical evidence is vague and unsatisfactory.
The attending general practitioner felt that the persisting pain in question could have possibly resulted from nerve or organic injury in the area. However, both the orthopedic and the internal medicine specialists testifying, excluded any organic injury. The testimony of the orthopedic specialist further indicates that the injury in question fell within the field of his specialty, orthopedic surgery, and he felt that there was no residual disability.
On the other hand, neither specialist was questioned as to possible other causes of the pain outside the field of their specialties, such as nerve injury. The internal medicine specialist frankly felt that there was some tenderness indicating some residual pain in the area of the blow, some five months after the accident. If indeed the explanation for the residual pain really lies in the field of another medical specialty, then the burden is upon the plaintiff to produce such proof, Wade v. Calcasieu Paper Co., La.App. 1 Cir., 82 So.2d 117 (although the plaintiff may have an opportunity to so show, in the event of a belated discovery thereof, see Supreme Court opinion in the same case, 229 La. 702, 86 So.2d 540).
We recognize that the plaintiff is under a duty only to prove disability and does not have to show the precise medical cause thereof in order to be awarded compensation. Allen v. Coal Operators Cas. Co., La.App. 3 Cir., 124 So.2d 344; Bassemier v. W. S. Young Construction Co., La.App. 1 Cir., 110 So.2d 766, certiorari denied. We do not reverse on that ground the trial determination of residual disability. *359 Nevertheless, the lack of a real medical explanation for the continued complaints of pain as causally related to the industrial accident, is a factor in our eventual determination that the plaintiff did not bear his burden of proving residual disability.
We primarily base our reversal upon our conclusion that, ultimately, the claimant did not prove that the residual effects of the injury were disabling beyond the initial period.
An examination of the testimony of the attending physician indicates that he felt the plaintiff suffered "pain" in the area and that therefore he was disabled, because "a man suffering you know can't work too well", Tr. 190. But the testimony of this physician, taken as a whole, indicates that the initial complaints of severe pain had largely subsided by October 10th, the date of the doctor's last examination and treatment (until he saw the claimant for litigation purposes some three months later). Likewise, the internal medicine specialist felt that there was tenderness in the area of the blow some five months after the accident, but his testimony does not indicate the nature of the pain to be severe or disabling in nature.
The actions of the claimant himself, considered in the light of this medical testimony, also tend to indicate that the residual pain or discomfort was not of a serious or disabling nature. Following his release from the hospital, he continued to visit and obtain pain-relieving medicine from his attending physician weekly until October 10th, a month later. After that, he did not report back for further examination or treatment until just before the trial, on which occasion the purpose was to obtain an evaluation for purposes of trial, rather than to obtain treatment.
In addition, the plaintiff obtained employment in heavy work, running a power saw, on November 26th, about three months after the accident. He performed this heavy work satisfactorily until his employer released him some six weeks later because there was no further need of the claimant's services.
We recognize that both of these factors, by themselves, may not be significant and do not necessarily indicate that a needy claimant, with a family to support, is not disabled; for he might perform hard work with pain and might avoid incurring additional medical expenses, despite a genuine disability, because of the need to feed his family, under circumstances where compensation benefits were not paid him despite his undoubted disability.
Nevertheless, these circumstances, in connection with the weakness of the medical testimony as to any causal relationship between the continued symptoms and the initial blow, together with the complete failure of the medical evidence to indicate definitely that any residual discomfort could be painful enough to be disablingall have influenced our ultimate determination that the plaintiff has not proved by a preponderance of the evidence any residual disability beyond the initial period. A compensation claimant is not entitled to compensation for disability in every instance where there is residual discomfort following an industrial accident: the residual pain must be substantial enough to be disabling within the meaning of our compensation act. Glidden v. Alexandria Concrete Co., 242 La. 626, 137 So.2d 894.
We agree with the trial court, however, that the claimant has definitely proved his initial disability.
Considering the record as a whole, and considering that the claimant was not released by his attending physician to return to full duties even on the occasion of this physician's last treatment on October 10th, we think the claimant has proved that he was temporarily and totally disabled from performing his duties for a period from September 7, 1962, the date of the accident, up until November 26th, when he reported to an employment at heavy work. He is therefore entitled to compensation benefits during this period at the stipulated weekly *360 rate of $35, together with unpaid medical expenses of $47 for treatment and medicine furnished during that period. (The defendant insurer has already paid the costs of hospitalization.)

2. Penalties.
Under the provisions of LSA-R.S. 22:658, twelve per cent penalties on unpaid amounts and reasonable attorney's fees are awarded to an employee for the arbitrary and capricious non-payment by an insurer of workmen's compensation benefits undoubtedly due, within sixty days after demand.
Plaintiff was injured on September 7, 1962, and he was hospitalized from September 11th to September 16th. Defendant was duly notified of this initial disability.
On September 20th, the claimant secured the services of an attorney, who made formal demand for the payment of compensation. The defendant acknowledged receipt of this demand on September 27th and also on October 31st, and one of the defendant's adjusters called upon the plaintiff's attorney on November 13th. Nevertheless, no compensation was paid or tendered for the initial period of disability. This suit was filed on November 16th.
Although the defendant might have been in good faith in failing to pay compensation beyond September 24th (on which date an orthopedist felt that the claimant had recovered from the severe contusions in his groin sufficiently to return to work), the defendant did not tender payment of compensation even up to this date. Instead, it has denied liability for compensation even for this period by formal answer in this suit, and it has continued by suspensive appeal to resist its liability for this amount, as well as for the other sums claimed.
The defendant insurer's failure to pay or tender compensation up through September 24th for undoubted disability for this period, is clearly arbitrary and capricious, so as to subject the claimant to payment of penalties and attorney's fees under LSA-R.S. 22:658.
In view of the uncontradicted medical report of disability during this period, the suspicions of the insured's foreman that the claimant was malingering (founded upon the foreman's tale of the claimant's allegedly suspicious actions while in the hospital), of course furnished no basis whatsoever for the refusal to pay compensation during this initial disability. Further, the defendant's denial of all liability in its answer to the suit, constitutes a waiver of the statutory notice and delay provided by the penalty statute, which might otherwise have been prerequisite to the imposition of penalties. Darby v. Johnson, La.App. 1 Cir., 118 So.2d 707; Daigle v. Great American Indemnity Co., La.App. 1 Cir., 70 So.2d 697, certiorari denied.
The law is now settled, overruling specific arguments to the contrary, that the twelve per cent penalties are to be computed upon the entire amount of weekly compensation awarded, not just upon the portion of the unpaid compensation as to which the defendant was arbitrary. Fruge v. Pacific Employers Insurance Co., 226 La. 530, 76 So.2d 719, affirming 71 So.2d 625; Cummings v. Albert, La.App. 1 Cir., 86 So.2d 727, certiorari denied. The cited decisions further indicate that, to avoid penalties, the insurer should tender the undisputed amount due, rather than forcing the claimant to litigate in order to recover such amount additionally to a claim for further compensation as to which the insurer might raise a good faith defense.
The penalty statute itself provides that the penalties "shall" consist of "12% damages on the total amount of the loss payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount." (Italics ours.) This statute is mandatory in effect, in the event of an arbitrary non-payment *361 of a loss covered by an insurer. Steadman v. Pearl Assurance Co., 242 La. 84, 134 So.2d 884.
Thus the 12% penalties statutorily fixed as damages for arbitrary non-payment, are to be allowed upon the basis of the entire award of unpaid compensation and medical expenses, not just upon the arbitrarily withheld portion of it.
A similar principle applies to the award of penalty attorney's feesthat is, they are based upon the recovery of the total amount of the award of unpaid weekly compensation, not just upon the portion which the insurer has arbitrarily failed to pay. See: Boss v. Marquette Casualty Co., La.App. 3 Cir., 150 So.2d 67, certiorari denied; Doucet v. Travelers Insurance Co., La.App. 3 Cir., 149 So.2d 448, certiorari denied; Fontenot v. Travelers Insurance Co., La.App. 3 Cir., 125 So.2d 664.
In each of the cited cases, the insurer did not dispute the claimant's disability nor its basic liability for compensation benefits. Nevertheless, the claimant was forced to file suit and prove up his entire case, because the defendant insurer arbitrarily either had consistently paid tardily (Boss) or had failed after demand to pay the weekly compensation for a short period (Doucet) or had refused after demand to pay at the correct weekly rate, even though paying weekly substantially the greater amount of the compensation due (Fontenot).
In accordance with the penalty statute, in these instances, the attorney's fees allowed were based upon the services to recover the "total amount of the loss", LSA-R.S. 22:658, not just for those to recover the insignificant amounts arbitrarily withheld. In such instances, the reason that attorney's fees based upon the entire award seem to be allowed, is that the suit is regarded as provoked by the defendant's arbitrary failure to pay at least what is undisputedly due, 125 So.2d 667, following which, the defendant's general denial in such suit forces the plaintiff to establish his entire case, 149 So.2d 450.
The trial court allowed attorney's fees of $1500. These attorney's fees are well justified by the record, which shows that, besides numerous conferences, the claimant's attorneys were forced to take depositions in three different cities, spend a day in the trial of the matter, and attend two ancillary hearings.
Our learned trial brother had properly fixed the attorney's fees with reference to the entire amount of the recovery allowed by him, which was for permanent and total disability. However, we have reduced the compensation recovery in this court to one for just eleven and one-half weeks of disabilityan award totalling approximately four hundred dollars in weekly compensation, plus forty-seven dollars in unpaid medical expenses.
This court, after serious consideration and over a forceful dissent, has recently held that the award of penalty attorney's fees should also take into consideration the net amount of the award made, as well as the amount of the legal services rendered. Shuff v. Liberty Mutual Ins. Co., La.App. 3 Cir., 134 So.2d 707, certiorari denied. In that case, therefore, we held that, in computing the penalty attorney's fees, the court should not take into consideration the unsuccessful efforts of the plaintiff's attorney to establish a greater extent of duration and disability than was ultimately allowed.
The amount of the penalty attorney's fee must therefore be reduced. Considering both the relatively small recovery, as well as the amount of legal services required to establish such, we think that, under all the circumstances reflected by this record, the penalty attorney's fees should be fixed at $400.00. See Shuff v. Liberty Mutual, 134 So.2d 707, cited above; Phillips v. Underwriters at Lloyd's, etc., La.App. 1 Cir., 128 So.2d 318 ($350 penalty attorney fees awarded for less than $200 unpaid compensation).

Decree.
For the foregoing reasons, the judgment of the trial court is amended so as to award *362 the plaintiff weekly compensation at the rate of Thirty-five ($35.00) Dollars from September 7, 1962 through November 25, 1962, together with unpaid medical expenses in the amount of Forty-Seven ($47.00) Dollars, together with legal interest upon said sums from date of delinquency until paid. The defendant insurer is further held liable in the amount of twelve (12%) per cent additional damages upon these principal amounts, and for attorney's fees in the amount of Four Hundred ($400.00) Dollars.
As thus amended, the trial court judgment is affirmed in all other respects. The defendant is cast with all costs of these proceedings and of this appeal.
Amended and affirmed.