FOURNET, Chief Justice.
The plaintiff, .Baton Rouge General Hospital, alleging that the defendant partnership and the individuals composing it[1] were indebted in solido for treatment rendered by the hospital to their employee, Miss Dot Carlisle, a patient from February 2nd to August 30, 1951 — said hospital services having been allegedly rendered at the written request of Superior Cleaners and in reliance upon the undertaking of defendants to be responsible for the costs by virtue of having signed a “Request for Services from the Baton Rouge General Hospital”— sought judgment against defendants for $4,498.65, plus interest from August 30, 1951, and costs. Exceptions of no cause and no right of action were referred to the merits, following which defendants answered, admitting that one of the partners signed the “Request for Services” but otherwise denying liability. Trial on the merits resulted in judgment for the plaintiff, against the partnership and individually and jointly against the two partners (each for half), for the amount due for services to August 1, 1951, totaling $4,048.75; and defendants have appealed.
The undisputed facts are that on the 2nd of - February, 1951, ' Miss Carlisle, *823 while pursuing her duties as an employee at the cleaning establishment owned and operated by the defendants, paused with her back to a gas-burning heater in order to get warm; her clothing ignited and flamed, and garments below the waist were quickly consumed; she was wrapped in a blanket and Sam Maggio, Jr., one of the partners, ordered the operator to summon an ambulance. Miss Carlisle was accompanied in the ambulance by Mrs. Doris Maggio, wife of Ross Maggio, the other partner; and upon arrival at the plaintiff hospital was taken to the emergency room. Mrs. Maggio was directed to the admitting office, and while there Mr. Sam Maggio arrived. Together they supplied the information requested by Mrs. Ferguson, the admitting clerk, who wrote their answers in long hand in the spaces provided on the hospital’s admission forms, one being a form headed “Request for Services.” That document was handed to Mr. Sam Maggio for signature and he signed “Superior Cleaners¡’ below which he wrote “Sam Maggio, Jr., 3266 Plank Rd., B.R. La.” (The emphasis is ours in all italicized quotations herein.) Compensation insurance was carried in the name of the firm and to the extent of its liability under the law — at that time, $500 for medical, surgical and hospital services. The local agent for the insurance company was then advised of the accident. At the time the severity of Miss Carlisle’s injuries was not known. The patient, throughout her hospitalization, was attended by Dr. Joseph Sabatier. He was not employed by the defendants and was apparently called into the case because he happened to be present in the emergency room when she was brought in. No bills were sent by plaintiff to defendant Superior Cleaners or to either partner until August, 1951; it was then for the first time that a simple statement, dated August 1, 1951, on the plaintiff’s billhead, was addressed to “Mr. Sam Maggio, Jr., Superior Cleaners,” with notation “Account of Miss Dot Carlisle” and the words “Hospital account Feb. 2, 1951 to July 31 * * $4,048.75.” It appears also that less than three weeks after the patient had entered the hospital a letter dated February 20, 1951, from the New Amsterdam Casualty Company, which carried compensation insurance for the defendant firm, was received by the plaintiff advising that in view of the limited medical coverage in the compensation insurance carried by it for Superior Cleaners and the fact that Miss Carlisle’s bills would probably exceed that limitation, they would have to withhold payment until the total due could be ascertained in order that the amount might be prorated. This information was communicated to Mr. Sam Maggio in a telephone call from an employee of the hospital.[2]
The plaintiff’s action is based on the document reproduced below and marked P-1 for identification.

*825

*827 It is contended that by signing the “Request for Service” form on a line following the words “Person Responsible,” Mr. Sam Maggio, Jr., made the defendants responsible for payment of all bills accruing because of services rendered Miss Carlisle; and that such responsibility was further brought to Mr. Maggio’s attention in a telephone call from the plaintiff’s office manager, Mr. Huclcabay, following receipt of the letter from New Amsterdam advising of the $500 limitation, at which time, it is claimed, the manager reminded Mr. Maggio that he had signed the “Request” and told him that the hospital was looking to him for payment — to which Mr. Maggio made no protest; and that the first time liability was denied by defendants was upon receipt of the bill dated August 1, 1951. .
The defendants, on the other hand, deny emphatically that by signing the “Request” form Mr. Maggio intended that the partnership or the partners should assume obligation for the payment of services rendered Miss Carlisle, and that he signed as he did because it was Superior Cleaners which was covered by insurance. It is the contention of defendants that Sam Maggio signed a routine admittance form provided by the hospital, upon request of the clerk after she had entered the information supplied by him and Mrs. Maggio; that no representation was made regarding assumption of financial responsibility either then or at any later time. Mr. Maggio’s version of the telephone conversation with “someone” at the hospital is that he was asked to whom the bill should be sent, and he “told them to get in touch with Hearin, Collins and Mclnnis,” his insurance agents, stating to the person that he “had coverage as far as the law was concerned.”
In upholding the plaintiff’s version of what transpired the trial, judge expressed the view that the purpose of the document relied on was to admit the injured patient to the plaintiff’s hospital for services on the financial responsibility of the signer, and that Mr. Maggio so understood it. The Court found, however, that the defendants did revoke their obligation to pay following-receipt of the statement of August 1, 1951, and therefore recovery was limited to the amount due up to that time, or $4,048.75.
We note that while the trial judge, in giving his reasons, stated “To my mind the form executed by Mr. Maggio has only one significance, which I think would appeal to any reasonable, intelligent person,” it is apt to observe that the record discloses that when defense counsel objected to parol testimony sought to be offered by plaintiff to show that Sam’ Maggio had received an explanation of “what he was signing,” the Court overruled the objection “for the reason that the document is so ambiguous it would admit of oral testimony in explanation óf it.”
The only witness offered by’ the plaintiff to prove its case was Mrs. Elva Ferguson, *829 now employed at the hospital in a different capacity but at the time acting as clerk in the admitting office. Although she testified that Sam Maggio was given the document to check the method of payment and to sign it — which he did — -from a careful examination of the exhibit marked P-1 and a perusal of the entire record we are convinced that the form was filled in its entirety by Mrs. Ferguson, including the check mark next to the words “On Receipt of Service” in the section headed “Method of Payment,” and was then handed to Mr. Maggio for his signature at the spot indicated by the cross mark. The witness, on being asked what was meant, “from the standpoint of the hospital,” by the phrase “On receipt of service,” stated that- it meant “at the time that the patient is discharged from the hospital;” yet such meaning is cleárly not self-evident and there was no attempt to prove that Mr. Maggio was put on notice.[3] Moreover, such arrangement for payment' was clearly unlikely in view of the fact (as brought out in Mrs. Ferguson’s testimony) that it was impossible, upon a patient’s admission as an emergency, to know the length of his stay, and the witness was unable to ■ explain why such method of payment would have been made available in a case like this where the signer supposedly was undertaking without qualification to make himself financially responsible for all bills, no matter what the duration of the patient’s treatment. Mrs. Ferguson admitted that under present practice the hospital expects financial arrangements to be made for weekly payments.
It is equally clear that the defendant-Sam Maggio, by signing the form as he did, never intended that the defendants should assume any further responsibility for the employee’s injuries than those attaching through the legal obligation, for which the firm carried compensation insurance with the -New Amsterdam Casualty Com-, pany. Sam Maggio’s testimony was unequivocally to that effect and in this respect he was not only corroborated by his sister-in-law, who was present, but we think, was supported by the testimony of Mrs. Ferguson herself. She testified that the forms-completed were “routine admission forms,” and when asked who furnished the information replied, “Well, I don’t remember exactly which one gave the information, it was routine information.as to the name and age and address and religion and so forth and *831 I do not remember which one, possibly both.” She admitted there was no discussion had with respect to financial arrangements, and when she was first asked the question, “Did you explain to him what it was he was signing?” answered “I think I did.” It is significant that this witness also testified: “If Mr. Maggio had- not signed the form at that time he or some person would have been contacted to have signed, to have given the information for insurance.”
It is fundamental that no contract is complete “without the consent of both parties * * *,” Louisiana Civil Code, Article 1766; “the will of both parties must unite on the same point,” Article 1798, and in interpreting contracts “it is the common intent of the parties — that is, the intention of all — that is to be sought for; if there was a difference in this intent, there was no common consent and, consequently, no contract.” Article -1945. See, also, Articles 1779, 1780 and 1797.
While the office manager, Mr. Huckabay, when called under cross examination, did testify positively that upon receipt of the letter from the insurance company he promptly called Sam Maggio, at which time he not only apprised Maggio of the contents of the letter with its limitations but also advised that they were looking to him for payment “because he had signed our ‘Request for Services’ as being the party responsible for the payment of the bill,” and that Maggio did not deny his responsibility, that portion of the conversation is flatly contradicted by Sam Maggio.
To say the least, the plaintiff failed to establish its claim; in fact, we think that the evidence preponderates in favor of the defendant’s contention, for we note in Mr. Huckabay’s testimony he admits that in his conversation with Sam Maggio “He did not make a promise to pay" and also admitted that if Mr. Maggio had denied liability, Miss Carlisle “would have gotten the same services she did get. There would have been no change in them. * * * people in the business office or any other part of the hospital can have no effect on the service that a patient gets. That’s strictly left up to the doctors. The patient is discharged when the doctor says she is discharged, and she is transferred to another hospital when he says she is to be transferred. We have nothing to say about that.” It is significant that he also admitted “this case was being handled in a different manner,” and that it had been discussed by them in the credit office. This admission, when considered in the light of Dr. Joseph Sabatier’s statement, which appears in the record, is also persuasive as showing that *833 the plaintiff was not in fact relying on the defendants’ financial responsibility. Dr. Sabatier stated that there were several conversations with regard to having the patient transported to Charity Hospital in New Orleans but no definite decision was ever made; that while she could have been moved without serious threat to her life some six weeks after admission, yet “if she had been moved at any time during her hospitalization, it would have been inimical to her welfare.” In addition to all of this is the unusual circumstance that defendants were never presented with a bill until the one dated August 1, 1951, at which time the charges had mounted to more than $4,000; and to add to the inconsistencies, this was not for payment “On receipt of services” according to the hospital’s interpretation, since Miss Carlisle remained a patient there for one month longer, having been discharged on August 30, when the charges for services had amounted to $4,498.65, the sum sought to be recovered in this suit.
For the reasons assigned, the judgment of the lower court is reversed and set aside, and the plaintiff’s suit is dismissed at its cost.
HAWTHORNE, J., absent.

. The defendant Superior Cleaners, a cleaning and pressing establishment, is an ordinary partnership composed of Ross Maggio and his brother, Sam Maggio, Jr., and is located in Baton Rouge, La.

. The subject matter of that conversation is one of the controversial points of this ease.

. The plaintiff hospital sought to justify its failure to send periodic statements during the six months which elapsed between February 2 and August 1 by the • -explanation that the' “Request for. Serv-. ices” form was checked to indicate that payment would be made on “receipt of service,” meaning payment at the time the patient is discharged.