HERGET, Judge.
This case arises as an aftermath of hurricane Flossie which, in 1956, struck Louisiana with devastating force and, among other damages, destroyed the television antenna and aerial belonging to the defendant, G. R. Cadle.
The plaintiff admittedly installed a new antenna and tower and this suit is one wherein he seeks to recover for the labor and materials in connection with such installation.
Prior to the hurricane, the defendant had contacted his insurance agent and had instructed him to provide him with a policy of insurance giving full protection for any damages sustained by him, including the destruction of his television antenna. Following the destruction the defendant reported his loss to his insurance agent who, in turn, reported the claim to the insurance company, thereafter the adjuster for the insurance company made contact with the agent and during the course of the investigation some question arose between the agent and the adjuster as to the coverage under the policy but they concluded that inasmuch as any error or lack of coverage was due to the failure of the special agent who initially wrote the policy to properly incorporate- in same the requested coverage, the insurance company would obligate itself to pay the loss. Subsequent to this meeting the agent, Mr. L. J. Chauvin, notified the defendant that the insurance company would be responsible for the damages. The succeeding description of the transaction as borne out by the record then becomes conflicting.
The plaintiff in his testimony stated that he was contacted by the defendant and a contract was entered into for the installation of the antenna. He further related that during the conversation the defendant informed him that he was covered by insurance and that his bill was to be sent to the insurance company. In the course of his testimony, plaintiff stated he informed the defendant that he had had some unsavory relations with insurance companies and as an accommodation to defendant he would send the bill to the insurance company but that he, the plaintiff, would look to the defendant for the payment of the bill.
The defendant related while testifying that the contract for the purchase and installation of the antenna was .made by and between Mr. Chauvin, the insurance agent, and plaintiff, and that he had never ordered the equipment from plaintiff.
*365 Mr. Chauvin while testifying as a witness was vague in response to the question as to the time that he talked with the plaintiff about the installation of the antenna. At page 39 of the transcript of appeal (19 of the testimony) we find:
“Q. Then when you talked to Mr. Long you talked to him after Mr. Mr. Cadle had selected him, is that correct? A. I don’t recall when I talked to him.
“Q. You don’t remember how long after? A. It must have been the same day when the transactions were taking place. I probably just called Mr. Long and told him the company man was going to assume the liability on it.”
While on direct examination, Mr. Chauvin, having been called as a witness by defendant, testified at page 35 of the transcript of appeal:
“Q. Mr. Chauvin before the TV antenna was installed did you talk to Mr. Long about the TV antenna and how much it was going to cost and so on? A. I can’t recall the conversation. I do remember speaking to Mr. Long on the telephone, and I knew at the time that Alabama General Insurance Company would make the claim good because of what the special agent told me.
“Q. Didn’t you request that Mr. Long send you the bills? A. I think I did. I think I did.”
There was introduced in evidence exhibits identified as D-l, D-2 and D-3, all of which are invoices of the plaintiff addressed to Shoreline Enterprises, Incorporated, the name of the agency under which Mr. Chauvin operated, which represented charges for the account sued upon. It is significant that on these invoices there appears the notations, on D-l “Oct. 9 Invoice 10428 (G. R. Cadle) 318.09,” and on D-2 “Oct. 9 Inv. 10428 G. R. Cadle 318.09,” and on D-3 “Sept. 16 chk $100.00 Bal. 218.-09 — G. R. Cadle Acc.” These invoices are dated respectively October 31, 1956, December 31, 1956 and October 1, 1957.
Plaintiff introduced in evidence as P-1 an invoice of plaintiff dated November 1, 1958 addressed to defendant G. R. Cadle, as follows:
“Oct 9, 1956 Invoice 10428.318.09
Sept 16, 1957 Ck. (Shoreline Ins.
Agy. Inc.) 100.00 218.09
Nov. 30, 1957 Invoice 14041 T.V. Service 11.48 229.57
Dec. 16 “ “ 14197 “ “ ... 12.65 242.22”
which represents the total amount sued on in this action.
The defendant, along with filing his answer, deposited into the Registry of the Court as admittedly owed by him the sum of $24.13 representing the total of the two last items shown on P-1 and, though judgment in favor of the plaintiff and against the defendant which was signed by the Trial Judge dated February 11, 1960 and from which judgment defendant appealed is in the full sum of $242.22, the certified extract of the minutes of the court for that date reflect that,
“On motion of counsel for plaintiff, ■ * * *
“On Further motion of said counsel, the Clerk of Court was instructed to apply the amount presently on deposit in the Registry of the Court ($24.13) towards the retirement of this Judgment.”
The circumstances under which the $100 shown on invoice D-3 was paid on the account is to be noted in the exhibit P-2 addressed to plaintiff by Shoreline Insurance Agency, Incorporated, reading as follows:
“September 16, 1957
“Mr. R. W. Long
“Radio Electric
“Barrow Street
“Houma, Louisiana-
“Dear Mr. Long: .
“Enclosed please find check for $100.-00 on the Cadle antenna account. As *366 soon as we are in the position to make another payment we will forward another check to you. As you probably know, we are negotiating with the Insurance Co. to collect the total amount. In the meantime I hate to ask you to keep holding the account open any longer since you have been so generous with Mr. Cadle in the past. In the Meantime Mr. Cadle is one of our very good customers and I feel that we should cooperate with him as much as possible.
“With highest personal regards,
“L. J. Chauvin
“(Sgd.) L. J. S.
“Shoreline Insurance Inc.”
Furthermore, Mr. Chauvin, when questioned as a witness in regard to this payment, related that the payment was made not by the insurance company but by him personally in the desire to retain good relations with his insured, the defendant, and with the expectation of recovering same upon the final settlement by the insurance company with Mr. Cadle, which was not accomplished because the insurance company became insolvent.
We are of the opinion that plaintiff has sustained the burden of proof to show that the contract for the installation of the antenna was made by and between plaintiff and defendant; especially are we persuaded in this belief in the consideration of the evidence that the type of material needed to be erected could be known only to the defendant inasmuch as the insurance agent was not cognizant of these facts. It is true that no doubt if the insurance company had not become insolvent it would have paid to the defendant the loss and the defendant, in turn, would have assigned the check to plaintiff.
The defendant relies on the case oí Baton Rouge General Hospital v. Superior Cleaners et al., 231 La. 820, 93 So.2d 20, where the Court found as a fact.that there had been no consent of the parties to the contract as contradistinguished from the situation here involved where we find, as evidently did the Trial Court though no written reasons were assigned therefor, that the evidence reflects that the plaintiff and defendant voluntarily consented to the contract.
Furthermore, the defendant relies on the case of Elam v. Shushan, 205 La. 471, 17 So.2d 713, 714, 715, but the factual situation here involved is not similar to that which existed in the Elam v. Shushan case wherein the claims of the plaintiff for services rendered to the defendant were rejected upon the Court’s determination that by agreement between the plaintiff and defendant the services for which plaintiff sought recovery were rendered by plaintiff gratuitously and in appreciation of favors which the defendant had granted the plaintiff and with the hope on the part of plaintiff of receiving future favors and that such was the agreement or understanding between them at the time when the plaintiff commenced the work that there would be no charge for his services. The Court categorized the obligation as the type defined in Article 1757 of the LSA-Civil Code. “* * * ‘operates only on the moral sense, without being enforced by any positive law, * * and creates no right of action, nor has it any legal operation.’ ”
Here there is no evidence of any gratuity entering into plaintiff’s agreement to perform the services for which recovery is sought. Moreover, as stated in LSA-C.C. Article 2292, “Certain obligations are contracted without any agreement, either on the part of the person bound, or of him in whose favor the obligation takes place.” So that, if it could be conceded that the insurance agent requested the installation of the antenna of plaintiff at defendant’s request and with his full knowledge and understanding, the doctrine of unjust enrichment becomes applicable as stated by this Court in the case of Granger v. Fontenot, La.App., 3 So.2d 215, at page 216:
*367 “Quasi contracts are the lawful and purely voluntary acts of a man from which there results an obligation to a third person and sometimes a reciprocal obligation between the parties themselves. Any act from which there results an obligation without any agreement forms a quasi contract. C. C. arts. 2293 and 2294.”
Therefore, for these reasons, the judgment of the Lower Court is affirmed.
Judgment affirmed.